UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------

ENTRAL GROUP INTERNATIONAL, LLC,

       Plaintiff,                      Case No.: 1-05-cv-02292-CBA-SMG

v.

LEGEND CAFÉ & KARAOKE, INC, WA MEN
ZHANG, and WEI HAO LI

       Defendants.


-----------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S REQUEST FOR RELIEF AND
## PROPOSED SUBSTITUTE DEFAULT JUDGMENT

### I.     PRELIMINARY STATEMENT

     Plaintiff Entral Group International, LLC ("EGI") submits this memorandum in support of its request for relief in conjunction with the default judgment entered by this Court on October 14, 2005, and for adoption and entry of its substitute Proposed Default Judgment.

### II.    FACTUAL BACKGROUND

     EGI is in the business of licensing and distributing Chinese language audio-visual karaoke works for commercial use. EGI is the exclusive licensee for such use in North America of all of the Chinese language audio-visual karaoke works ("the Works") created by Universal Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Co., and Warner Music Hong Kong Ltd ("the Companies"). *November 7, 2005 Declaration of Nicolas Chai ("Chai Decl."), ¶ 4.* The artists whose images, voices, and performances are featured in the Works are generally

NYC01/7788750v1

Dockets.Justia.com

under exclusive contracts with the Companies with regard to karaoke audio-visual works featuring their likeness and have not produced or authorized any third party to produce any other competing karaoke audio-visual work. *See Chai Decl.*, ¶ 5.

EGI is, and at all relevant times has been, the exclusive licensee in North America of copyright interests in <u>all</u> of the Chinese language karaoke audio-visual recordings of each of the Companies, including but not limited to the Works listed in Exhibit 1. *See Chai Decl.*, ¶ 6, Ex. 1. The catalog of Works exclusively licensed to EGI (the "Catalog"), however, is not static. Rather, the Catalog is constantly expanding as new audio-visual works are created by the Companies and those additional Works automatically become part of the collective Works exclusively licensed to EGI and which, in turn, EGI sublicenses to its customers. *See Chai Decl.*, ¶ 7.

The Works listed in Exhibit 1 are divided into two general categories. The Works listed in Schedule A of Exhibit 1 are older works, sometimes called "Back Catalogs," which are periodically updated. The Back Catalogs have never been legally distributed for commercial use in the U.S. and Canada except through EGI. The Works listed in Schedule B of Exhibit 1 are more recent works, usually called "Control Catalogs," and have never been legally distributed in *any* form in North America except through EGI. The Schedule B lists are also regularly updated. In fact several hundred additional audio-visual Works have been made available to EGI by the Companies since the Control Catalog was last updated. *See Chai Decl.*, ¶ 8.

Upon the authorization of the Companies, EGI has registered a number of the Works with the Registrar of Copyrights in the U.S. Copyright Office. Among the Works registered are:

| Karaoke Work Title | | Name of Performing Artists | | Copyright Registration Number |
|---|---|---|---|---|
| Chinese | English | Chinese | English | |
| 當愛變成習慣 | When Love Becomes A Habit | 張學友 | Jacky Cheung | PA 1-138-367 |
| 爛泥 | Dirty Soul | 許志安 | Andy Hui | PA 1-146-593 |
| 大男人 | Chauvinist Man | 許志安 | Andy Hui | PA 1-146-594 |
| 合久必婚 | Marriage Will Follow After Many Years | 李克勤 | Hacken Lee | PA 1-146-597, L |
| 越吻越傷心 | The More I Kiss You The More It Hurts | 蘇永康 | William So | PA 1-138-334 |
| 下一站: 天后 | The Next Stop: Tin Hau | Twins | Twins | PA 1-146-595 |
| 邊走邊愛 | Loving You While Walking | 謝霆鋒 | Nicholas Tse | PA 1-146-601 |
| 咬唇 | Bite The Lips | 楊千嬅 | Miriam Yeung | PA 1-146-603 |
| 飛女正傳 | Triad Girl Sage | 楊千嬅 | Miriam Yeung | PA 1-146-598 |
| 愛是 | Love is | 鄭秀文 | Sammi Cheng | PA 1-210-224 |
| 默契 | Tacit Understanding | 鄭秀文 | Sammi Cheng | PA 1-210-226 |
| 不拖不欠 | Not Owing Anything | 鄭秀文 | Sammi Cheng | PA 1-210-217 |
| 捨不得你 | Unwilling To Let You Go | 鄭秀文 | Sammi Cheng | PA 1-210-218 |
| 我們的主題曲 | Our Theme Song | 鄭秀文 | Sammi Cheng | PA 1-210-222 |

(The "Selected Works.") *See Chai Decl.*, ¶ 9, Ex. 2.

Defendant Legend Café & Karaoke, Inc. ("Legend") is a commercial establishment holding a New York State liquor license and is engaged in the business of offering for commercial use Chinese language karaoke works. Defendant Legend's use involves copying those audio-visual karaoke works onto a computer capable of playing the works and then allowing its paying clients to perform such works in a public room. *See Chai Decl.*, ¶ 10.

In late 2004, Mr. Chai, President of EGI, heard from persons who had visited the establishment that Defendants were commercially using all or substantially all of the Works

without EGI's permission. Mr. Chai thereafter sent a cease and desist letter to Defendants in December 2004 (the "Cease and Desist Letter"). The Cease and Desist Letter insisted that Defendants cease infringing and indicated that, if Legend was determined to be a suitable establishment, EGI would be willing to enter into a license agreement with Legend. Defendants have ignored EGI's requests and continue to willfully and blatantly copy and use the Works in violation of EGI's legal rights. *See Chai Decl.,* ¶ 13.

Mr. Chai has personally visited Defendant Legend Café & Karaoke, Inc. ("Legend") on two separate occasions, April 9, 2005 and October 22, 2005, to determine if Defendants were commercially using works exclusively licensed to EGI. *See Chai Decl.,* ¶ 14. Upon his investigations, Mr. Chai observed that Legend is a one-story establishment located at 6201 8th Avenue in Brooklyn, New York. The establishment consists of a bar with a lounge area that sells alcoholic beverages and where patrons have the opportunity to access and perform the karaoke works. *See Chai Decl.,* ¶ 15. The lounge area contains approximately nine tables and three television monitors that display the karaoke works. At the bar, there is a computer monitor displaying the menu of karaoke works available for public use. Patrons are provided with a binder containing printed lists of the works available for selection. The bartenders, wait-staff or disc jockeys input the selection made by each patron and the computer then plays the selected work. *See Chai Decl.,* ¶ 16.

Upon information and belief, there is at least one other room on the premises that contains one or more other computer units that are used to copy karaoke works onto a networked computer system ("copying computer"), to store those karaoke works ("storage computer") and to distribute those karaoke works ("distribution computer") to the lounge computer. These functions may be combined into one machine or may be on several machines. The most frequent

NYC01/7788750v1

configuration is one in which there is a single copying computer which is connected to a combined storage and distribution computer. *See Chai Decl.*, ¶ 17. The karaoke works are loaded onto the storage computer via a software program. *See Chai Decl.*, ¶ 18.

During the April 9, 2005 investigation, Mr. Chai visited Legend and was seated at a table in the lounge area by a Legend employee who offered Mr. Chai and other patrons the opportunity to access and perform the karaoke audio visual works. On that particular night the lounge was approximately 95% occupied, which, in conjunction with the covert nature of Mr. Chai's visit, made it virtually impossible for him to personally access and browse the printed list of karaoke works corresponding to the works which had been stored on the computerized karaoke system. *See Chai Decl.*, ¶ 19. Through the karaoke performances of various patrons, however, Mr. Chai was able to personally observe that at least two audio-visual works Defendants offered to the public consisted of those Works exclusively licensed to EGI:

| Karaoke Work Title | | Name of Performing Artists | |
|---|---|---|---|
| Chinese | English | Chinese | English |
| 愛與誠 | Ai Yu Cheng | 古巨基 | Leo Koo |
| 亂世佳人<br>(第二回) | Luan Shi Jia Ren | Twins | Twins |

These are "Berne works" which are not registered in the United States, but entitled to enforcement. *See Chai Decl.*, ¶ 20.

On October 22, 2005, after this Court entered a default judgment against Defendants, Mr. Chai once again visited Legend to determine if Defendants were still commercially using works exclusively licensed to EGI. On this occasion the establishment was far less occupied which provided Mr. Chai with an opportunity to browse the binder containing the list of karaoke-works offered by Legend to its patrons. The binder appeared to be substantially identical to the

- 5 -

binder Mr. Chai had observed being used on his prior visit.  It appeared that substantially all of the Works were being offered for use by the Defendants. *See Chai Decl.*, ¶ 21.

Because of the public nature of the setting and because the inspection was being conducted covertly, Mr. Chai was unable to spend extensive time searching the binder or making notes. However, Mr. Chai was able to observe that the vast majority of the artists listed were artists who had exclusive contracts with the Companies, and whose Works were exclusively licensed to EGI. *See Chai Decl.*, ¶ 22-23.  Moreover, Mr. Chai personally observed that at least two audio-visual works Defendants offered to the public consisted of Selected Works:

| PA Number | Karaoke Work title | | Name of Performing Artists | |
|---|---|---|---|---|
| | Chinese | English | Chinese | English |
| PA 1-138-367 | 當愛變成習慣 | When Love Becomes A Habit | 張學友 | Jacky Cheung |
| PA 1-146-597 | 合久必婚 | Marriage Will Follow After Many Years | 李克勤 | Hacken Lee |

These Works are registered in the United States Copyright Office. *See Chai Decl.*, ¶ 24, Ex. 3.

From Mr. Chai's observations, it is clear that the Works exclusively licensed to EGI represent a substantial portion, if not a majority, of the audio-visual works available on Defendants' computerized karaoke system.  Moreover, Mr. Chai believes that all fourteen of the Selected Works had been illegally copied and reproduced, and were being illegally distributed and performed by Defendants. *See Chai Decl.*, ¶ 25.

Defendants have commercially used and are commercially using the Registered Works and many of the works identified in Schedules A and B of Exhibit 1 without the permission of EGI.  *See Chai Decl.*, ¶ 26.  Further, Defendant is not now and has never been authorized by EGI, or any of the Companies, to use EGI's trademarks or the Companies' trademarks as featured in the Works in connection with any business or service or to create the impression of

NYC01/7788750v1

an association between Defendants business and that of EGI.  Defendant has purposely promoted and continues to promote such Works in a way as to create a false association between Defendant and EGI. *See Chai Decl.*, ¶28.

Moreover, Defendant's use of the EGI and Companies' trademarks in connection with its unauthorized use of the Works is likely to cause confusion, mistake, or deception.  In particular, customers of Defendant Legend are likely to believe that Legend's services are authorized, sponsored or otherwise approved by EGI, the exclusive licensee of the Works, when in fact they are not. *See Chai Decl.*, ¶ 29.  Such confusion is likely to occur within the State of New York and within this judicial district. *See Chai Decl.*, ¶ 30.

Additionally, many of Defendants' unauthorized copies of the Works are of poor and sub-standard quality as a result of being unlawfully copied, and the use of such copies tarnishes the reputation of EGI and the Companies.  EGI has suffered substantial harm to its reputation based on the Defendants use of inferior works, Defendants false designation of origin in using trademarks and Defendants undermining of the EGI's licensing structure. *See Chai Decl.*, ¶ 31-32.

Defendants have commercially profited, and continue to commercially profit, both directly and indirectly, through their unauthorized use of the Works. *See Chai Decl.*, ¶ 33.  Legend and numerous other karaoke clubs are illegally using the Works and refusing to take licenses.  Merely forcing Defendants to pay the license fees that they owe is far from an adequate remedy.  If the only penalty following a judgment finding infringement is an obligation to pay the license fee, karaoke establishments will be encouraged to refuse to honor copyright laws.  If they are not caught or sued, they pay nothing and are unjustly enriched; if they *are* caught, they only pay what they would have paid if they were honest.  Such a limited form of relief would

ultimately require that Plaintiff engage in endless litigation to enforce its copyright interests. *See Chai Decl.*, ¶ 37.

Further, the use by Legend and other karaoke establishments of unauthorized pirated works, which are often released before the authorized legitimate copies, severely undermines EGI's reputation as the exclusive licensee of high quality audio-visual Chinese language karaoke works and renders ineffective EGI's efforts to implement and enforce licenses with other karaoke clubs. *See Chai Decl.*, ¶ 38. Unlicensed clubs often obtain pirated copies of the Works before legitimate clubs which await the authorized distribution of the Works. This disadvantage to Licensees caused by pirating by Legend and others further damages EGI, the Companies and EGI's customers. *See Chai Decl.*, ¶ 38.

The ability of EGI to prevent the unauthorized use of the Works is essential to the protection of the Works and the economic model that is the basis for the creation of those Works. The widespread counterfeiting of the Works and use without license by large numbers of karaoke clubs threaten the very existence of EGI and undermines the livelihood of the record companies and the artists who create the Works. If Defendants are allowed to continue in their willful violation of their obligations, other unlicensed karaoke clubs will be encouraged and emboldened to continue in engaging in their illegal conduct. *See Chai Decl.*, ¶ 39-40.

If unlicensed karaoke establishments who are using the Works continue to refuse to pay licensing fees now because Legend and similar establishments are getting away with not paying licensing fees or even answering a summons and complaint, it is estimated that the lost revenues from the twenty-five other unlicensed Chinese language karaoke establishments in this district alone in the coming year would exceed $1,000,000. *See Chai Decl.*, ¶ 41. Accordingly, if

NYC01/7788750v1

widespread unauthorized use of the Works continues, the very existence of legitimate distribution of Chinese karaoke in the United States is at risk. *See Chai Decl.*, ¶ 42.

### III.    PROCEDURAL BACKGROUND

On May 5, 2005, Plaintiff commenced this action against Defendants by filing a Summons and Complaint. Defendants were each served with copies of the Summons and Complaint on June 4, 2005. Defendants having failed to plead or otherwise defend in this action, and said default having been duly noted, Judge Amon entered a default judgment against Defendants on October 14, 2005 and referred Plaintiff's request for damages to Magistrate Judge Gold. By Order dated October 17, 2005, Magistrate Gold directed Plaintiff to make its submissions in support of Plaintiff's damages by November 7, 2005. As directed by the Court, Plaintiff, through its former counsel, served a copy of the October 17, 2005 Order on each defendant via certified mail as evidenced by the return receipt attached as Exhibit F to Robert E. Hanlon's Declaration ("Hanlon Decl.") submitted herewith. *See Hanlon Decl.*, ¶ 16, Ex. F.

In this matter, EGI was originally represented by Coudert Brothers LLP ("Coudert"). Recently Coudert has publicly announced that it is about to cease its operations. Further, all of the individual attorneys who appeared in this matter have left Coudert for other firms. Consequently EGI has transferred its representation in this matter to Alston & Bird LLP ("A&B"), and a stipulation of substitution of counsel has been filed with the Court. *See Chai Decl.*, ¶ 46. None of the attorneys from Coudert who acted for Plaintiff in this matter are associated with its current counsel.

A proposed form of default judgment was submitted by EGI's former counsel on October 7, 2005 with the motion for entry of a default judgment. Based upon present counsel's review of the filings made on behalf of Plaintiff in connection with this default judgment, it appears that a

NYC01/7788750v1

substitute proposed default judgment is necessary to more clearly articulate the relief to which the Plaintiff is entitled as a matter of law and as sought in the Complaint. A substitute Proposed Default Judgment and Permanent Injunction is therefore submitted with this memorandum for the Court's consideration.

### IV.    PERMANENT INJUNCTION AND AN ORDER OF IMPOUNDMENT IS NECESSARY

#### A. PERMANENT INJUNCTION

The Copyright Act provides that a court has the authority to issue a permanent injunction on such terms as it deems reasonable to prevent Defendants from their continued infringement of Plaintiff's copyright interests. 17 U.S.C. § 502(a). Typically, the moving party must show the threat of a continuing violation in order to be entitled to injunctive relief. *Barrera v. Brooklyn Music, Ltd.*, 346 F.Supp.2d 400, 412-413 (S.D.N.Y. 2004).

As demonstrated by Defendants' continued infringement of Plaintiff's copyright interests despite the Cease and Desist Letter and their failure to even appear in or defend this litigation, it is apparent that, unless Defendants are permanently enjoined from using the Works, Defendants will continue to willfully and blatantly copy, distribute and perform the Works without EGI's permission and in violation of EGI's copyright interests. *See Barrera v. Brooklyn Music, Ltd.*, 346 F.Supp.2d 400, 412-413 (S.D.N.Y. 2004) (permanent injunctive relief warranted since competitor failed to respond to copyright holder's assertion of rights under Copyright Act, suggesting significant threat of continuing infringement of copyrighted photograph). *See also Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (Evidence that owners of bar infringed copyrighted musical compositions despite knowledge of the copyrights and continued to have copyrighted music performed at the bar without

authorization warranted permanent injunction against unauthorized public performance of any copyrighted compositions licensed through plaintiff performing rights licensing organization).

Unless this Court orders a permanent injunction prohibiting Defendants from copying, distributing or performing the Works exclusively licensed to EGI, it is clear from their behavior thus far that Defendants will continue to willfully and blatantly infringe Plaintiff's copyright interests.

### B. ORDER OF IMPOUNDMENT

Pursuant to section 503(a) of the Copyright Act, a court in which an action for copyright infringement is pending may order the seizure and impoundment of all copies claimed to have been made or used in violation of the copyright owner's exclusive rights and of *all devices* by means of which such copies may be reproduced. 17 U.S.C. § 503(a) (emphasis added). "Impoundment of items that allegedly infringe plaintiff's rights under the Copyright Act, 17 U.S.C. § 106, is appropriate if plaintiff establishes a *prima facie* case of copyright infringement…" *U2 Home Entertainment, Inc. v. Bowery Music City, Inc.*, 2003 WL 22889738 (S.D.N.Y. 2003). As delineated in detail above, through the entry of the default judgment, and as further delineated in the supporting declaration of Nicolas Chai, EGI has clearly established copyright infringement by demonstrating that it owns valid copyrights and that Defendants have engaged in unauthorized copying. As such, an order providing for the seizure of all physical copies and any equipment containing the Works exclusively licensed to EGI in the Defendants' possession is proper.

That copyright owners may impound, retain, and even destroy, infringing copies of protected works is well established. 17 U.S.C. § 503(b); *see RSO Records, Inc. v. Peri*, 596

- 11 -

F.Supp. 849, 863 (S.D.N.Y. 1984) (destruction of seized inventory which was used substantially for unlawful purposes was appropriate).

Plaintiffs are also entitled to impound and permanently retain the equipment used by Defendants as the means of carrying out their infringing conduct.  Having obtained a default judgment, Plaintiff has gone far beyond establishing a *prima facie* case of copyright infringement.  Further, impoundment of all copies made or used and of all equipment capable of containing, playing or displaying the Works in violation of the EGI's exclusive rights is not only warranted, but is necessary to prevent Defendants from continuing its illegal activities.  In *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, this Court upheld an impoundment order where the Court found that Defendants were in possession of illegally made copies of Plaintiff's videocassettes and that there was good cause to be concerned that copying would continue. 859 F.Supp. 636 (E.D.N.Y. 1994).   In rejecting Defendants attempt to contest the equipment impoundment by alleging that the equipment was also being used in legitimate copying of the tapes, the Court stated "even if equipment may be used for a legitimate purpose, it is not protected from seizure if it has been employed for the illegal purposes alleged." *Id*. at 639. Accordingly, the use of equipment to copy, distribute or perform some works (if any) which Defendants may have obtained permission to use legitimately, to the extent there are any, will not legitimize the illegitimate uses of its equipment.  Inasmuch as Defendants have failed to claim legitimate use or submit any evidence of to that effect obviates the need to even consider such a defense.

Forfeiture of the equipment is also proper.  Courts have routinely decided to deprive infringers of the instrumentalities of their bad acts when there was reason to believe that those defendants would likely continue to willfully engage in those bad acts, and also as a deterrent to

- 12 -

others from engaging similar illegal conduct. 17 U.S.C. § 503(b); see *RSO Records, Inc. v. Peri*, 596 F.Supp. 849, 863 (S.D.N.Y. 1984) (destruction of seized machinery which was used substantially for unlawful purposes was appropriate).

Unless the Court grants impoundment and permanent forfeiture to Plaintiff of the equipment that Defendants are using to and illegally copy, distribute and play the Works, it is highly likely that Defendants will continue to willfully infringe the Works. Such impoundment and forfeiture should include at least the copying computer, the storage computer and the distribution computer. This may actually consist of one, two or more separate machines. *See Chai Decl.*, ¶ 43. Defendants originally obtained their copies of the Works that had been distributing to their patrons from illegal, pirating sources, not from EGI or the Companies. Unfortunately, such illegal pirated copies continue to be available in the U.S. marketplace. Those illegal copies of the Works could be re-loaded onto Defendants' equipment with little effort or expense. *See Chai Decl.*, ¶ 44.

Further, it would be difficult, if not impossible, to continually monitor Defendants compliance as an alternative to impoundment and forfeiture. Given that the Works are in Chinese, and given the relatively small community of investigators qualified and willing to conduct investigations, it would be extremely difficult, and extremely costly, to continually attempt to conduct covert visits to monitor Defendants compliance without being recognized by Defendants and prohibited from entering the premises. *See Chai Decl.*, ¶ 45.

Defendants' ability and willingness to obtain, and success in obtaining illegal copies has been demonstrated by their conduct to date. Only impoundment and forfeiture of the equipment, along with the illegal copies, is likely to stop these egregious acts.

For the above reasons, an order providing for the impoundment and forfeiture of all physical and electronic copies of the Works and any equipment containing the Works or capable of copying, distributing and performing those Works, which Works and equipments are in the Defendants' possession, custody or control is proper and necessary.

## V.    DAMAGES

### A.  ACTUAL DAMAGES AND PROFITS

Section 504(a) makes an infringer of copyrights liable for (1) the copyright owner's actual damages as a result of the infringement and any additional profits of the infringer that are attributable to the infringement; or, in the alternative, (2) statutory damages.

In determining actual damages, courts assess the facts from the point of view of the copyright owner and endeavor to compensate the owner for any harm suffered by reason of the infringer's illegal act. *On Davis v. Gap, Inc.*, 246 F.3d 152, 159 (2nd Cir. 2001). In appropriate circumstances, actual damages may be measured by the fair market value of a license authorizing defendants' use of the copyrighted work. *Barrera*, 346 F.Supp.2d at 408-409. *See also, On Davis*, 246 F.3d at 165 ("If a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner, it seems entirely reasonable to conclude that the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for").

The annual licensing fee that Plaintiff charges to a club of Defendants' size and configuration is $19,000 base fee plus a one time supplement for access to Works from the Control Catalog. Prorating the annual fee over eleven months (since the December 2004 Cease and Desist Letter), the net annual fee to date would be $17,417. The usual one time for a club of Legend's size and type would be $15,000 for access to 150 Works from the Control Catalog.

NYC01/7788750v1

The total fee to date for the period from the Cease and Desist Letter to today would be $32,417. *See Chai Decl.*, ¶ 36.

In addition to actual damages, under Section 504(b) a copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b). "The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing." *On Davis v. Gap, Inc.*, 246 F.3d 152, 159 (2nd Cir. 2001).

Legend is a karaoke club. It derives its profits, charged by the drink or plate, solely because it offers karaoke entertainment. The karaoke entertainment it presently offers is based, by and large, on the pirated works it has copied, distributed and played, which are the property of EGI. All of its profits should be attributable to the infringing acts.

Based on the expertise of Nicolas Chai, through his experience in the industry and his direct observation of Legend's business operation, the estimated gross revenue of the establishment is between $50,000 and $60,000 per month. The annual profit is estimated to be at least $600,000 and may exceed $750,000. *See Chai Decl.*, ¶ 35. Absent Defendants' submission of deductible expenses and other offsets, Plaintiff is entitled to at least that amount.

This number is a good faith estimate, based on Mr. Chai's experience in the industry. Plaintiff is mindful that it is an *estimate*. However, the lack of actual data is directly attributable to Defendants willful refusal to fulfill their legal obligations to appear in this action and provide

- 15 -

evidence of their gross revenues. Consequently, Defendants absence has created the very deficiency of exact evidence available. As such, it is fair and appropriate to use the good faith estimates provided.

Thus, under Section 504(1)(b) of the Copyright Act, Plaintiff should recover actual estimated profits of Defendants that are attributable to the infringement in the amount of $605,000 ($55,000 x 11 months). While Defendant has the duty to present evidence of offsets, Plaintiff declines to add the lost license fees discussed above to its total damage calculation since it is obvious that they would be eligible to be deducted as expenses.

Given the egregious nature of Defendants' conduct, however, this amount is not enough to properly compensate Plaintiff for the full amount of damages it has suffered and will continue to suffer as a direct result of Defendants willful and blatant infringement of Plaintiff's copyright interests. As discussed above, Defendants' conduct reflects, supports and encourages a widespread pattern of copyright violation among the many other illegal clubs that mirror its conduct. As such, Plaintiff respectfully requests that this Court grant statutory damages in the maximum amount possible to serve the Copyright Act's dual purpose of compensation and deterrence.

## B. STATUTORY DAMAGES

Under the Copyright Act, the copyright owner is entitled to statutory damages in lieu of actual damages and profits, "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Moreover, where the copyright owner is able to establish willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Thus, in determining an award of statutory damages, a court must first address the question of willfulness. To prove willfulness,

- 16 -

the copyright owner must show that the infringer had actual or constructive that it was infringing the owner's copyrights or else acted in reckless disregard of the high probability that it was infringing the owner's copyrights. *Arclightz and Films Pvt. Ltd v. Video Palace Inc.*, 303 F.Supp.2d 356, 361-362 (S.D.N.Y. 2003). Plaintiff has established both.

Defendants were on actual notice of their infringement through the Cease and Desist Letter but continued to infringe despite the notice and ample opportunity to cure their violations. They simply refused to obey the law. Further, they knew that copyright notices were needed for copying and use of karaoke audio-visual works. In this age of *Napster* and other highly public litigations that reach even to the level of the adolescent consumer, no commercial establishment can reasonably claim that it is unaware that it needs a license to download, copy, distribute and perform audio and audio-visual materials for commercial use.

Defendants have not only disregarded the Cease and Desist Letter, but Defendants have also willfully refused to appear before this Court. On October 22, 2004, after the finding by this Court a default, and many months after being served with a summons and complaint, Defendants continued to copy, distribute and perform the Works that are exclusively licensed to EGI.

When setting the damages for willful infringement, several factors are considered including "the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, *the deterrent effect*, if any, that such an award will have on the defendant and on third parties, the cooperation of the defendant in providing evidence concerning the value of the infringing material, the defendant's state of mind and the conduct and attitudes of the parties." *Id.* (emphasis added).

Plaintiff should be awarded the maximum statutory damages permitted by law for each act of infringement alleged in the complaint and proven pursuant to the entry of default. By

awarding Plaintiff the maximum amount of damages permitted under Section 504(c) of the Copyright Act, both Defendants and similar infringing establishments will be deterred from engaging in further illegal conduct.

This Court has broad discretion to set the amount of statutory damages, within the minimum and maximum amounts, in order to serve the two objectives of the Copyright Act – compensation and deterrence. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233 (1952) (the statutory rule not only "compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct").

Under the Copyright Act, an infringer is liable for damages for each of the original works infringed. 17 U.S.C. § 504(c)(1).  To determine the number of violations, the court need only total the number of separate, individual works which were the subject of the defendants' infringing activities.  Plaintiff believes that all fourteen Selected Works (those registered with the Registrar of Copyrights) were being infringed by Defendants at the time the original Complaint was filed, in addition to thousands of other unregistered works subject to enforcement under the Berne Convention and U.S. law.  In addition to Defendants' observation of at least two the Selected Works, Plaintiff also observed that the vast majority of the artists and Works offered to the public by Defendants are artists who have exclusive contracts with the Companies, and whose Works are exclusively licensed to EGI. *See Chai Decl.,* ¶ 22 - 24.

Defendants have had every opportunity to appear before this Court and offer evidence that fewer works were actually infringed.  They have deliberately refused to do so and have forfeit that right to rebut the allegations contained in the Complaint, now deemed proven through the entry of a default

In light of Defendants willful and extensive infringement of Plaintiff's copyright interests, and in an effort to deter similar establishments as intended by the Act, Plaintiff requests that the Court award the maximum of $150,000 for each work that Plaintiff has proven. Beyond question, Plaintiff has established that at least two of the Selected Works, registered with the Copyright Office, have been willfully infringed. At the very *least*, Plaintiff should be awarded $150,000 for each of these two Works, totaling $300,000 in statutory damages. We believe that the Court could conclude that all fourteen (14) of the Selected Works have been infringed and that statutory damages in the amount of $2,100,000 (14 separate works X $150,000) could be justified. Courts in this circuit have recently awarded the maximum statutory amount in similar cases where Defendants engaged in willful and continued patterns of copyright infringement. *See U2 v. Lai Ying I*, 2005 WL 1231545, at *7 (S.D.N.Y. May 25, 2005) (awarding $150,000 per infringed title for 49 titles for a total of $7,350,000 in statutory damages).

An award of the maximum amount of statutory damages per Work proven to have been infringed in this case is both warranted and necessary. Such an award would not only compensate the copyright owner whose works have been infringed by Defendants egregious behavior, but would also fulfill the other key objective of the Copyright Act – the deterrence of future infringement on the part of these and other infringers. An award of the maximum award per Work in this case is the best deterrent.

Finally, public policy strongly favors an award of the maximum statutory damages. The United States ahs been engaged in an ongoing effort to obtain cooperation of the government and courts of the Peoples' Republic of China in the enforcement of copyright interests. While there have recently been reports of some progress in this area, there remains a serious concern that the

NYC01/7788750v1

copyright interests of U.S. citizens and corporations are being routinely violated, and that enforcement is less than effective.

In the present case, we are attempting to enforce the copyright interests of Chinese Companies who have entrusted their licensing program to a U.S. entity. Those Chinese copyright interests are being grossly and flagrantly violated by U.S. karaoke clubs who believe that they can act with impunity because China is far away, and no one will attempt to enforce, or that the penalties upon enforcement will be worth the risk. Vigorous enforcement by the U.S. courts of treaty-established copyright obligations is in the public interest, both in upholding U.S. law, but also in establishing a commitment to a reciprocal enforcement of the rights of the citizens of our treaty partners, just as we wish them to enforce our citizens' rights. If we lead, China may follow.

In any event, Plaintiff respectfully requests that the Court award the maximum permitted by law, but in any event, no less than the maximum statutory damages available for each of the two incontrovertible instances of infringement in the amount of $300,000.

### C. ATTORNEYS FEES AND COSTS

Section 505 of the Copyright Act gives the Court explicit authority to grant the recovery of full costs and reasonable attorney's fees to the prevailing party. 17 U.S.C. § 505. As the prevailing party in this action, Plaintiff is undoubtedly entitled to the attorney's fees it has incurred in this action.

Coudert has represented EGI on a number of matters over the past few years. On several occasions since the inception of this particular matter, Plaintiff asked Coudert to keep separate and distinct records concerning the fees and costs attributable to this specific case. Despite these requests, Coudert did not do so. *See Chai Decl.*, ¶ 47. Since the announcement of Coudert's

dissolution, Plaintiff has once again asked Coudert to provide him with a breakdown of the fees and costs incurred for this particular matter.  Coudert has failed to provide any such accounting and has not indicated when, or even if, such an accounting could ever be provided. *See Chai Decl.,* ¶ 48.

When Plaintiff originally engaged Coudert to commence actions of this type, an agreed-upon fixed fee for preparation of complaints was set.  The first complaint was to be charged at $13,000 and subsequent complaints at $8,500.  This matter was filed subsequent to another action.  Consequently, the fees charged by Coudert for the complaint in this action are deemed to be in the amount of $8,500. *See Chai Decl.,* ¶ 49. The additional time spent on preparing the default judgment and supporting papers by Coudert attorneys are conservatively estimated to be approximately five (5) hours.  To the best of Mr. Chai's knowledge, Plaintiff was being charged approximately $350 per hour by Coudert for such services, for a total of $1,750.  As best as can be determined, the attorneys' fees incurred for the Coudert representation in this matter total $10.250. *See Chai Decl.,* ¶ 50-51.

Since Alston & Bird has taken over this representation, EGI has incurred $18,077.00 in fees to date, and will incur and additional $7,000.00 in fees in implementing the proposed Judgment.  A breakdown of those fees is provided in the declaration of Robert E. Hanlon, lead counsel on this matter for A&B, submitted concurrently. *See Chai Decl.,* ¶ 52; *See also Hanlon Decl.,* ¶ 6-7.

Plaintiff is therefore entitled to be awarded a total of $35,327.00 for attorneys fees in this action.

In addition, Plaintiff is entitled to be awarded $595 in costs as provided under the Rules and as set forth in Bill of Costs attached as Exhibit D to declaration of Robert E. Hanlon. *See also Hanlon Decl.,* ¶ 14.

### D. THIS COURT SHOULD TREAT THIS AS AN EXCEPTIONAL CASE

Defendants' conduct has been egregious and intentional.   As highlighted above, Defendants have not only willfully refused to the Cease and Desist Letter, but have also failed to appear and defend in this action and have continued to infringe Plaintiff's mark even after the Court issued a default judgment.

It is well established that, an award of attorney fees for violating the Trademark Act is appropriate both for "exceptional cases under § 1117(a) and for willful violations under § 1117(b)." *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 171 (S.D.N.Y. 1999). The sort of misconduct that supports an attorney's fees award includes "not only willful infringement, but also willful defiance and protraction of judicial processes attempting to stop the illegalities." *Id.*

In this case, Defendants have willfully and blatantly infringed and have completely disregarded the authority of this Court by failing to even appear in this action.   Therefore, Plaintiffs respectfully request that the Court treat this as an exceptional case.  As such, attorneys' fees and costs, as enumerated above, should be awarded to Plaintiff.

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter EGI's substitute Proposed Default Judgment and Permanent Injunction, granting EGI a permanent injunction enjoining Defendants from infringing the Works, granting EGI's request for impoundment and forfeiture of all physical copies and any equipment capable of copying, containing, playing or displaying the

NYC01/7788750v1

Works in the Defendants' possession, as well as granting EGI and award of damages, attorneys' fees and costs as enumerated above.

Dated: New York, New York
       November 7, 2005

Respectfully submitted,

_s/Robert E. Hanlon_____
Robert E. Hanlon
Lara Holzman (LH-8355)
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
*Attorneys for Plaintiff Entral Group
International, LLC*

*On the papers:*
Brook A. Clark
*(admitted in Georgia and Kentucky)*