UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
ENTRAL GROUP INTERNATIONAL, LLC,

       Plaintiff,

v.

LEGEND CAFÉ & KARAOKE, INC, WA MEN ZHANG, and WEI HAO LI

       Defendants.

Case No.: 1-05-cv-02292-CBA-SMG

**DECLARATION OF NICOLAS CHAI**

-------------------------------------------------------------

NICOLAS CHAI, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury:

1. I am the President of Entral Group International, LLC, ("EGI") and I submit this declaration in support of EGI's proposed substitute default judgment and in support of EGI's request for relief in conjunction with the default judgment entered by this Court on October 14, 2005.

2. I am fully familiar with all of the facts set forth herein based upon my own personal knowledge and my position as President of EGI.

3. I have been actively involved in the Chinese language karaoke audio-visual industry for over four years. For more than a year, I served as the manager of a karaoke establishment that offers Chinese language karaoke. For the past four years, I have been involved in the licensing side of the Chinese language karaoke industry as President of EGI. In addition, I have also been actively consulting the licensees and investors on karaoke operations.

4.  EGI is the exclusive licensee in North America of all of the Chinese language audio-visual karaoke works ("the Works") created by Universal Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Co., and Warner Music Hong Kong Ltd ("the Companies"),

5.  The artists whose images, voices, and performances are featured in the Works are generally under exclusive contracts with the Companies with regard to karaoke audio-visual works featuring their likeness and have not produced or authorized any third party to produce any other competing karaoke audio-visual work.

6.  EGI is, and at all relevant times has been, the exclusive licensee in North America of copyright interests in all of the Chinese language karaoke audio-visual recordings of each of the Companies, including but not limited to the Works listed in Exhibit 1 (the "Catalog").

7.  The Catalog of Works exclusively licensed to EGI, however, is not static. Rather, the Catalog is constantly expanding as new audio-visual works are created by the Companies and automatically become part of the Works exclusively licensed to EGI and which, in turn, EGI sublicenses to its customers.

8.  The Works listed in Exhibit 1 are divided into two general categories. The Works listed in Schedule A of Exhibit 1 are older works, sometimes called "Backlists" or "Back Catalogs," which are periodically updated. The Back Catalogs have never been legally distributed for commercial use in the U.S. and Canada except through EGI. The Works listed in Schedule B of Exhibit 1 are more recent works, usually called "Control Catalogs," and have never been legally distributed in any form in North America except through EGI. The Schedule B lists are also regularly updated. In fact several hundred additional audio-visual Works have been made available to EGI by the Companies since the Control Catalog was last updated.

2

9. Upon the authorization of the Companies, EGI has registered a number of the Works with the Registrar of Copyrights in the U.S. Copyright Office. Among the Works registered are:

| Karaoke Work Title | | Name of Performing Artists | | Copyright Registration Number |
|---|---|---|---|---|
| **Chinese** | **English** | **Chinese** | **English** | |
| 當愛變成習慣 | When Love Becomes A Habit | 張學友 | Jacky Cheung | PA 1-138-367 |
| 爛泥 | Dirty Soul | 許志安 | Andy Hui | PA 1-146-593 |
| 大男人 | Chauvinist Man | 許志安 | Andy Hui | PA 1-146-594 |
| 合久必婚 | Marriage Will Follow After Many Years | 李克勤 | Hacken Lee | PA 1-146-597 |
| 越吻越傷心 | The More I Kiss You The More It Hurts | 蘇永康 | William So | PA 1-138-334 |
| 下一站: 天后 | The Next Stop: Tin Hau | Twins | Twins | PA 1-146-595 |
| 邊走邊愛 | Loving You While Walking | 謝霆鋒 | Nicholas Tse | PA 1-146-601 |
| 咬唇 | Bite The Lips | 楊千嬅 | Miriam Yeung | PA 1-146-603 |
| 飛女正傳 | Triad Girl Sage | 楊千嬅 | Miriam Yeung | PA 1-146-598 |
| 愛是 | Love is | 鄭秀文 | Sammi Cheng | PA 1-210-224 |
| 默契 | Tacit Understanding | 鄭秀文 | Sammi Cheng | PA 1-210-226 |
| 不拖不欠 | Not Owing Anything | 鄭秀文 | Sammi Cheng | PA 1-210-217 |
| 捨不得你 | Unwilling To Let You Go | 鄭秀文 | Sammi Cheng | PA 1-210-218 |
| 我們的主題曲 | Our Theme Song | 鄭秀文 | Sammi Cheng | PA 1-210-222 |

("Selected Works"). See Exhibit 2.

10. Defendant Legend Café & Karaoke, Inc. ("Legend") is a commercial establishment holding a New York State liquor license and is engaged in the business of offering for commercial use Chinese language karaoke works. Defendant Legend's use involves copying those audio-visual karaoke works onto a computer capable of playing the works and then allowing its paying clients to perform such works in a public room.

NYC01/7788245v1

11. Upon information and belief, Defendant Wa Men Zhang ("Zhang") is the principal, chairman or chief executive officer of Legend.

12. Upon information and belief, Defendant Wei Hao Li ("Li") is a principal or executive officer of Legend.

13. In late 2004, I heard from persons who had visited the Legend establishment that Defendants were commercially using all or substantially all of the Works without permission. I thereafter sent a cease and desist letter to Defendants in December 2004 (the "Cease and Desist Letter"). The letter insisted that Defendants cease infringing and indicated that, if Legend was determined to be a suitable establishment, EGI would be willing to enter into a license agreement with Legend. Defendants failed to enter into a license agreement and otherwise failed to respond to the letter.

14. I have personally visited Defendant Legend Café & Karaoke, Inc. ("Legend") on two separate occasions, April 9, 2005 and October 22, 2005, to determine if Defendants were still commercially using works exclusively licensed to EGI.

15. Upon my investigations, I observed that Legend is a one-story establishment located at 6201 8th Avenue in Brooklyn, New York. The establishment consists of a bar with a lounge area that sells alcoholic beverages and where patrons have the opportunity to access and perform the karaoke works.

16. The lounge area contains approximately nine tables and three television monitors that display the karaoke works. At the bar, there is a computer monitor displaying the menu of karaoke works available for public use. Patrons are provided with a binder containing printed lists of the works available for selection. The bartenders, wait-staff or disc jockeys input the selection made by each patron and the computer then plays the selected work.

NYC01/7788245v1

17. Upon information and belief, there is at least one other room on the premises that contains one or more other computer units that are used to copy karaoke works onto a networked computer system ("copying computer"), to store those karaoke works ("storage computer") and to distribute those karaoke works ("distribution computer") to the lounge computer. These functions may be combined into one machine or may be on several machines. The most frequent configuration is one in which there is a single copying computer which is connected to a combined storage and distribution computer.

18. The karaoke works are loaded onto the storage computer via a software program.

19. During the April 9, 2005 investigation, I visited Legend and was seated at a table in the lounge area by a Legend employee who offered me and other patrons the opportunity to access and perform the karaoke audio visual works. On that particular night the lounge was approximately 95% occupied, which, in conjunction with the covert nature of my visit, made it virtually impossible for me to personally access and browse the printed list of karaoke works corresponding to the works which had been stored on the computerized karaoke system.

20. Through the karaoke performances of various patrons, however, I was able to personally observe on the television monitor that at least two of audio-visual works Defendants offered to the public that were being performed that night consisted of Works exclusively licensed to EGI:

| Karaoke Work Title | | Name of Performing Artists | |
|---|---|---|---|
| Chinese | English | Chinese | English |
| 愛與誠 | Ai Yu Cheng | 古巨基 | Leo Koo |
| 亂世佳人 (第二回) | Luan Shi Jia Ren | Twins | Twins |

These are "Berne works" which are not registered in the United States, but entitled to enforcement.

21. On October 22, 2005, after this Court entered a default judgment against Defendants, I again visited Legend to determine if Defendants were still commercially using works exclusively licensed to EGI. On this occasion the establishment was far less occupied, which provided me with an opportunity to browse the binder containing the list of karaoke-works offered by Legend to its patrons. The binder appeared to be substantially identical to the binder I had observed being used by other patrons on my prior visit. From my review, it appeared that substantially all of the Works were being offered for use by the Defendants.

22. Because of the public nature of the setting and because the inspection was covert, I was unable to spend extensive time searching the binder or making notes.

23. However, I observed that the vast majority of the artists and Works listed are artists who have exclusive contracts with the Companies, and whose Works are exclusively licensed to EGI.

24. I personally observed that at least two audio-visual works Defendants offered to the public consisted of the Selected Works:

| Karaoke Work title | | Name of Performing Artists | |
|---|---|---|---|
| Chinese | English | Chinese | English |
| 當愛變成習慣 | When Love Becomes A Habit | 張學友 | Jacky Cheung |
| 合久必婚 | Marriage Will Follow After Many Years | 李克勤 | Hacken Lee |

These Works are registered in the United States Copyright Office. See Exhibit 3.

25. From these observations, it is clear to me that the Works exclusively licensed to EGI represent a substantial portion, if not a majority, of the audio-visual works available on Defendants' computerized karaoke system. Moreover, upon information and belief, I believe that all fourteen of the Selected Works had been illegally copied and reproduced, and were being illegally distributed and performed by Defendants.

NYC01/7788245v1

26. Defendants have commercially used and are commercially using the Selected Works and many, if not all, of the other Works identified in Schedules A and B of Exhibit 1, without the permission of EGI.

27. The copies of the Works on Defendants computers are counterfeit copies.

28. Defendant is not now and has never been authorized by EGI, or any of the Companies, to use the Companies' trademarks as featured in the Works in connection with any business or service or to create the impression of an association between Defendants business and that of EGI. Defendant has purposely promoted and continues to promote such Works in a way as to create a false association between Defendant and EGI.

29. Defendant's use of the Companies' trademarks in connection with its unauthorized use of the Works is likely to cause confusion, mistake, or deception. In particular, customers of Defendant Legend are likely to believe that Legend's services are authorized, sponsored or otherwise approved by EGI, the exclusive licensee of the Works, when in fact they are not.

30. Such confusion is likely to occur within the State of New York and within this judicial district.

31. Many of Defendants' unauthorized copies of the Works are of poor and sub-standard quality as a result of being unlawfully copied and the use of such copies tarnishes the reputation of EGI and the Companies.

32. EGI has suffered substantial harm to its reputation based on the Defendants' use of inferior works, Defendants' false designation of origin in using Trademarks and Defendants' undermining of the EGI's licensing structure.

33. Defendants have commercially profited, and continue to commercially profit, both directly and indirectly, through its unauthorized use of the Works.

NYC01/7788245v1

34. In my experience, Chinese language karaoke establishments are primarily cash-based operations with at least a 50% profit margin annually.

35. Based on my experience in this industry and my direct observations of the establishment in question, I estimate the gross revenue of Defendant Legend to be between $50,000 and $60,000 per month. The annual gross revenue is estimated to be at least $600,000 and may exceed $750,000.

36. The annual licensing fee that Plaintiff charges to a club of Defendants' size and configuration is $19,000 base fee plus a one time $15,000 supplement for access to 150 Works from the Control Catalog. Prorating the annual fee over eleven months (since the December 2004 Cease and Desist Letter), the net annual fee to date would be $17,417. When added to the supplemental fee the total lost revenue to date is $32,417.

37. If karaoke clubs such as Legend who are illegally using the Works refuse to take licenses, and the only penalty post judgment or order is to pay the license fee upon enforcement by a court, it will greatly encourage karaoke establishments to willfully violate copyright laws, and will ultimately require that Plaintiff engage in endless litigation to enforce its copyright interests.

38. The use by Legend and other karaoke establishments of unauthorized pirated works, which are often released before the authorized legitimate copies, further undermines EGI's reputation as the exclusive licensee of high quality audio-visual Chinese language karaoke works and renders ineffective EGI's efforts to implement and enforce licenses with other karaoke clubs.

39. The ability of EGI to prevent the unauthorized use of the Works is essential the protection of the Works and the economic model that is the basis for the creation of those Works. The widespread counterfeiting of the Works and use without license by large numbers of karaoke

NYC01/7788245v1

clubs threaten the very existence of EGI, its affiliate TCW and undermines the livelihood of the record companies and the artists who create the Works.

40. If Defendants are allowed to continue in their willful violation of their obligations and their infringing conduct, other unlicensed karaoke clubs will be encouraged and emboldened to continue in engaging in their illegal conduct.

41. If unlicensed karaoke establishments who are using the Works continue to refuse to pay licensing fees now because Legend and similar establishments are getting away with not paying licensing fees, or even answering a summons and complaint, it is estimated that the lost revenues from the twenty-five other unlicensed Chinese language karaoke establishments in this district in the coming year would exceed $1,000,000.

42. If widespread unauthorized use of the Works continues, the very existence of legitimate distribution of Chinese language karaoke in the United States is at risk.

43. Unless the Court grants impoundment of the equipment that is used to illegally copy, distribute and play the Works, it is highly likely that Defendants will continue to infringe the Works. Such impoundment would have to include at least the copying computer, the storage computer and the distribution computer. This may actually consist of one, two or more separate machines.

44. Defendants originally obtained their copies of the Works that had been distributing to their patrons from illegal, pirating sources, not from EGI or the Companies. Such illegal pirated copies continue to be available in the U.S. marketplace. Those illegal copies of the Works could be re-loaded onto Defendants' equipment with little effort or expense.

45. Further, it would be difficult, if not impossible, to continually monitor Defendants compliance as an alternative to impoundment. Given that the Works are in Chinese, and given

NYC01/7788245v1

the relatively small community of investigators qualified and willing to conduct investigations, it would be extremely difficult, and extremely costly, to continually monitor Defendants compliance without being recognized by Defendants and prohibited from entering the premises.

46. In this matter, EGI was originally represented by Coudert Brothers LLP ("Coudert"). Recently Coudert has publicly announced that it is about to cease its operations. Further, all of the individual attorneys who appeared in this matter have left Coudert for other firms. Consequently EGI has transferred its representation in this matter to Alston & Bird LLP ("A&B"), and a stipulation of substitution of counsel has been filed with the Court.

47. Coudert has represented EGI on a number of matters over the past few years. On several occasions since the inception of this particular matter, I asked Coudert to keep separate and distinct records concerning the fees and costs attributable to this specific case. Despite these requests, Coudert did not do so.

48. Since the announcement of Coudert's dissolution, I have once again asked Coudert to provide me with a breakdown of the fees and costs incurred for this particular matter. They have also failed to provide any such accounting and cannot tell me when, or even if, such an accounting could ever be provided.

49. When I originally engaged Coudert to commence actions of this type, we had agreed to a fixed fee for preparation of complaints. The first complaint was to be charged at $13,000 and subsequent complaints at $8,500. This matter was filed subsequent to another action. Consequently, the fees charged by Coudert for the complaint in this action are deemed to be in the amount of $8,500.

50. The additional time spent on preparing the default judgment and supporting papers by Coudert attorneys are conservatively estimated to be approximately five (5) hours. To the best of

my knowledge, I was being charged approximately $350 per hour by Coudert for such services, for a total of $1,750.

51. As best as can be determined, the attorneys' fees incurred for the Coudert representation in this matter total $10,250.

52. Alston & Bird has taken over this representation. A breakdown of those fees is provided in the declaration of Robert E. Hanlon, lead counsel on this matter for A&B, submitted concurrently.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
         November 21, 2005

_____
Nicolas Chai

11

NYC01/7768245v1