UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ENTRAL GROUP INTERNATIONAL, LLC.,

                        **Plaintiff,**                    **REPORT AND**
                                              **RECOMMENDATION**
               **-against-**                   **CV-05-2292 (CBA)**

LEGEND CAFÉ & KARAOKE, INC., WA
MEN ZHANG, and WEI HAO LI,

                       **Defendants.**
--------------------------------------------------------X
GOLD, S., U.S.M.J.:

## Introduction

       Plaintiff, Entral Group International, LLC. ("EGI"), brings this action alleging that

defendants, Legend Café & Karaoke, Inc. ("Legend"), Wa Men Zhang, and Wei Hao Li,

individually and as chairmen or chief executive officers of Legend, illegally copied, distributed

and performed plaintiff's copyright-protected works in violation of U.S. copyright laws, 17

U.S.C. §§ 101 *et seq.*[1]  More specifically, plaintiff alleges it is the exclusive North American

licensee of certain Chinese-language karaoke audio-visual works, and that defendants allowed

customers to play and perform these works on Legend's premises without EGI's authorization.

Compl. ¶¶ 18-20.

       Upon plaintiff's application and in light of defendants' failure to appear or otherwise

defend in this action, the Clerk of the Court entered the default of defendants on October 14,

2005.  Docket Entry 7.  Subsequently, defendants appeared through counsel and moved to vacate

---

[1] In its complaint, plaintiff also asserts several other federal and state law claims.  Compl.
¶ 1.  In its application for damages, however, plaintiff seeks damages and other remedies
pursuant only to the Copyright Act.  Memorandum of Law in Support of Plaintiff's Request for
Relief and Proposed Substitute Default Judgment ("Pl. Mem."), Docket Entry 10, pp. 14-20.

Dockets.Justia.com

the default, but then withdrew their motion and represented that they would not submit a response to plaintiff's application for damages and injunctive relief. Docket Entry 15; Minute Entry dated February 3, 2006.

The Honorable Carol Bagley Amon has referred the matter to me for a damages inquest. This Report sets forth my recommendation with respect to the amount of damages and other relief to be awarded.

### Facts

EGI is a licensee, marketer, and distributer of Chinese language audio-visual karaoke works for commercial use in the United States. Compl. ¶¶ 6, 7. Legend is a commercial establishment engaged in the business of karaoke entertainment. *Id*. ¶ 19. Suspecting that Legend was infringing its copyrights, plaintiff sent a cease and desist letter to defendants in December of 2004 and offered defendants an opportunity to enter into a licensing agreement with EGI. Declaration of Nicolas Chai ("Chai Decl."), Docket Entry 11, ¶ 13. Defendants failed to respond. *Id*. Nicholas Chai, president of EGI, then personally visited Legend on April 9 and October 22, 2005 and browsed through the list of available karaoke music selections. *Id*. ¶¶ 14, 19-25. Chai observed that the "vast majority" of works offered by defendants were exclusively licensed to EGI. *Id*. ¶ 23. In his declaration, Chai specifically noted four of EGI's audio-visual works offered to the public by defendants. *Id*. ¶¶ 20, 24. Based in large part on Chai's observations, EGI alleges that defendants willfully copied, distributed and performed plaintiff's works without its permission and in violation of plaintiff's copyright interests.

**Discussion**

A.     Liability

Once found to be in default, a defendant is deemed to have admitted all of the well-

pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc., v.*

*E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct.

1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  I must

determine, therefore, whether the allegations of the complaint establish the elements required to

state a claim pursuant to the Copyright Act.

The Copyright Act provides that

> [a]nyone who violates any of the exclusive rights of the copyright
> owner . . . is an infringer of the copyright . . . .  The legal or
> beneficial owner of an exclusive right under a copyright is entitled
> . . . to institute an action for any infringement of that particular
> right committed while he or she is the owner of it.

17 U.S.C. § 501(a-b).  I first consider whether EGI is the owner of exclusive rights under the

copyrights at issue with standing to sue for infringement.  The Second Circuit has held that an

exclusive licensee of a copyright has standing to bring an infringement action.  *Eden Toys, Inc. v.*

*Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982), *superceded on other grounds*

*by* FED. R. CIV. P. 52(a).  *See also* 17 U.S.C. § 201(d)(2) ("The owner of any particular exclusive

right is entitled, to the extent of that right, to all of the protection and remedies accorded to the

copyright owner by this title."); *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 70-72 (2d Cir.

2001).  *Cf. Broadcast Music, Inc. v. CBS Inc.*, 1983 WL 1136, at *5-6 (S.D.N.Y. July 20, 1986)

(finding a lack of standing where the plaintiff was a nonexclusive licensee of copyrights).

EGI alleges that it is the exclusive licensee in the United States of thousands of Chinese

language audio-visual karaoke works. Compl. ¶ 14. Plaintiff represents various international music companies (the "Companies") who, "either directly or through their subsidiary labels, own and have exclusive legal control of all worldwide copyright interests in their respective karaoke audio-visual works (collectively, the "Works")."[2] *Id*. ¶ 8. The Companies have granted TC Worldwide Ltd. ("TCW") "the exclusive rights to reproduce, distribute and commercially use, and to authorize third parties to reproduce, distribute, and commercially use, the Works in commercial karaoke outlets in the United States and Canada." Compl. ¶ 12. TCW subsequently assigned all of its copyright interests in the Works in the United States to its affiliate, plaintiff EGI. *Id*. ¶ 13. Thus, as an exclusive licensee, EGI has standing to sue for infringement.

I next consider whether plaintiff's complaint properly pleads a claim for copyright infringement pursuant to 17 U.S.C. §§ 501 *et seq*. To establish a claim for copyright infringement, a plaintiff must show both ownership of a copyright (or, as discussed above, an exclusive license under a copyright), and unauthorized copying by a defendant. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). To satisfy the first prong of a successful copyright action, the copyright owner generally must have registered the work with the United States Copyright Office. *See* 17 U.S.C. §§ 411(a), 501(b). To satisfy the second prong, the plaintiff must show by direct or circumstantial evidence that the defendant duplicated the plaintiff's copyright-protected work. *Lipton*, 71 F.3d at 471.

---

[2] The Works were created in Hong Kong and are protected under the copyright laws of several countries, including the United States. Compl. ¶ 9. The artists featured in these Works generally have exclusive contracts with the Companies with respect to featuring their likenesses in karaoke works. Compl. ¶ 11. These artists have not authorized any third party to reproduce their likenesses on any competing karaoke works. *Id*.

According to the complaint, the Companies authorized EGI to register a number of the Works with the United States Copyright Office.  Compl. ¶ 17 and Ex. 2.  Of the four karaoke works Chai specifically observed at Legend, plaintiff has submitted copies of the U.S. copyright registrations for two of them.[3]  Chai Decl. ¶ 24 and Ex. 3.  Having registered with the U.S. Copyright Office, plaintiff clearly satisfies the first prong of copyright infringement for these two registered works.

With respect to the second prong, the complaint alleges that defendants are commercially using the Works without authorization from EGI or the Companies.  Compl. ¶ 20.  Indeed, Chai observed many of EGI's Works available at defendants' club and inferred that there was a computer on the premises illegally copying the Works.  Chai Decl. ¶¶ 17-18.  Thus, the well-pleaded allegations of the complaint establish a claim for copyright infringement.

B.     <u>Damages</u>

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not.  *See Greyhound Exhibitgroup*, 973 F.2d at 158.  Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.  *Id*.  Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded.  *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon evidence

---

[3] Plaintiff alleges that the other two works Chai observed at Legend are protected under the Berne Convention for the Protection of Literary and Artistic Works.  Chai Decl. ¶ 20.  While suggesting that damages for a larger number of works could be available, EGI seeks damages for violations of the Copyright Act only with respect to the two U.S. copyright-protected Works.  Pl. Mem. pp. 18-19.

presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff has submitted a memorandum of law and declarations of its president and counsel. Docket Entries 10-12, 23. Defendants, although they have appeared through counsel, have not submitted any opposition to plaintiff's submissions. Accordingly, a hearing is not warranted.

A copyright owner may elect to recover either actual or statutory damages. *See* 17 U.S.C. § 504. If a plaintiff elects statutory damages, the Copyright Act authorizes a recovery of $750 to $30,000 per infringed work, at the court's discretion. 17 U.S.C. § 504(c)(1). This amount may be increased up to $150,000 per work if the court finds the infringement was committed willfully. 17 U.S.C. § 504(c)(2). Plaintiff in this action seeks an award of statutory damages and urges the court to award the maximum for willful infringement for each infringed work. Pl. Mem. pp. 16-20.

A district court has broad discretion when determining the amount of statutory damages to award under the Copyright Act. *See Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co. Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986). The purposes to be served by a statutory damages award are both compensatory and punitive. *Id*. at 1117. Factors considered by courts in determining a just award include: 1) revenues lost by plaintiff, 2) profits reaped and expenses avoided by the infringer, 3) the value of the copyright, and 4) general and specific deterrence. *Id*.

Although EGI seeks an award of statutory damages, it has submitted some evidence of its actual damages to aid the court in its determination. In his declaration, the president of EGI asserts that plaintiff ordinarily charges an annual licensing fee to a club of Legend's size in the

6

amount of $19,000 plus a one time $15,000 supplement for access to the Works.  Chai Decl.

¶ 36.  Moreover, Chai, who has been "actively involved in the Chinese language karaoke audio-

visual industry for over four years," estimates that defendants' monthly gross revenue is between

$50,000 and $60,000."  Chai Decl. ¶¶ 3, 35.  Plaintiff argues that recovery of defendants' profits

under 17 U.S.C. § 504(1)(b) would amount to an award of approximately $605,000.[4]  Pl. Mem.

p. 16.  Based upon this calculation of actual damages, plaintiff seeks the maximum statutory

award for willful infringement: $150,000 each for the two U.S.-copyrighted infringements for a

total award of $300,000.[5]  Pl. Mem. p. 19.

To be awarded an enhancement, plaintiff must demonstrate willful infringement on the

part of defendants.  To prove "willfulness" under the Copyright Act, the plaintiff must show that

the defendants were actually aware of or recklessly disregarded the copyright owner's interests.

*Lipton*, 71 F.3d at 472; *see also Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d. Cir.

2001).

Plaintiff has sufficiently demonstrated willful infringement by the defendants.  In

December of 2004, plaintiff sent defendants a cease and desist letter alerting them to plaintiff's

copyright interests.  Chai Decl. ¶ 13; Compl. ¶ 31.  In its letter, plaintiff offered to enter into a

licensing agreement with defendants for the Works if plaintiff determined Legend to be a suitable

---

[4] Plaintiff apparently calculated this number by multiplying the average of defendants' estimated monthly revenues ($55,000) by the number of months defendants had been knowingly infringing plaintiff's copyrights (11) as of the time plaintiff filed it's application for damages.  Pl. Mem. p. 16.  Plaintiff does not explain the basis for its assumption that defendants' gross revenues are equal to its profits.

[5] While plaintiff requests damages for fourteen infringed Works, it has clearly established that defendants actually infringed only two works protected by U.S. copyright laws.  *See* Chai Decl. ¶¶ 20, 24.

establishment.  *Id*.  Thus, plaintiff has established that the defendants were aware of EGI's copyright interests.  *See also Peer Int'l Corp. v. Max Music & Entm't, Inc.*, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004) (holding that defendant's failure to answer lawsuit, resulting in an entry of default, supported a finding of willfulness).

Willful infringement alone, however, does not justify awarding plaintiff the maximum in enhanced damages.  *See Peer Int'l*, 2004 WL 1542253, at *4.  Courts in this Circuit have awarded maximum statutory damages for willful copyright infringement only in exceptional and rare circumstances, such as in cases with overwhelming evidence of willfulness, defiance of court orders, or repeated violations by a defendant even after being put on notice by a court that his activity was infringing a copyright.  *See, e.g.*, *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999); *U2 Home Entmt, Inc. v. Lai Ying Music & Video Trading, Inc.*, 2005 WL 1231645, at *6-7 (S.D.N.Y. May 25, 2005); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 479-80 (S.D.N.Y. 2001); *Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, 2001 WL 930248, at *4 (S.D.N.Y. Aug. 16, 2001).  Indeed, as the court noted in *Peer International*, 2004 WL 1542253, at *4, "in this Circuit, the maximum statutory penalty is rarely awarded for copyright infringement, and in most cases only where a party is found to have deliberately ignored a court decision indicating that the party's conduct constituted infringement."  (citations omitted).  Here, in contrast, plaintiff has not proffered any evidence establishing, or even suggesting, that defendants have previously violated the copyright laws, nor has it provided any other basis that would justify the maximum statutory enhancement.

Recently, in a case brought by the same plaintiff alleging the same facts but against different defendants, I recommended that plaintiff be awarded $30,000 for each of the ten

protected works infringed, resulting in a total statutory damages award of $300,000.  *See Entral Group Int'l, LLC v. Parliament Mgmt Corp.*, 05-CV-1916 (ERK), Docket Entry 23.  If I used the same formula in this case, the statutory damages award would total only $60,000.  In light of the facts presented here, this would not sufficiently deter defendants or compensate plaintiff.  An award of $60,000 would amount to only one month of defendants' gross profits as estimated by plaintiff.  Moreover, $60,000 is approximately the same amount that plaintiff would have charged defendants to enter into a licensing agreement.[6]  Accordingly, I respectfully recommend that plaintiff be awarded double the estimated actual damages, i.e. the lost licensing fees, for a total statutory damages award of $120,000, which represents $60,000 in enhanced statutory damages for each of the two infringed works pursuant to the Copyright Act.  17 U.S.C. §§ 504(c)(1), 504(c)(2).  *See Van Der Zee v. Greeningde*, 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006) (noting that "there would be little deterrent value in awarding damages equal to what a defendant would have paid in acting properly" and awarding double the licensing fees as a statutory damages award); *GMA Accessories, Inc. v. Megatoys, Inc.*, 2003 WL 193507, at *4 (S.D.N.Y. Jan. 14, 2003) (awarding double defendant's revenues from the infringement as statutory damages).  This amount is sufficient to redress the harm caused by defendants' activities and to deter future violations by these defendants and other potential infringers.

---

[6] Plaintiff states that there is a one time fee of $15,000 for access to 150 Works plus an annual licensing fee of $19,000 for a club of defendants' size.  Chai Decl. ¶ 36.  Plaintiff totaled the annual fee from December, 2004 to November 7, 2005 as $17,417.  Adjusting the annual fee through today's date, would result in fee to plaintiff in the amount of $45,916.67 ($1,583.33 per month times 29 months equals $45,916.67).  Adding the one time fee, plaintiff would have received $60,916.67 from defendants if they had licensed plaintiff's Works.

C.    Attorney's Fees and Costs

The Copyright Act provides that a court may award costs and reasonable attorney's fees to the prevailing party in an action for copyright infringement. *See* 17 U.S.C. § 505. An award of attorney's fees is particularly appropriate in a case, like this one, of willful infringement. *Kepner-Tregoe,* 186 F.3d at 289; *Peer Int'l*, 2004 WL 1542253, at *5.

All claims for attorney's fees in the Second Circuit must be supported by contemporaneous time records. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In this action, plaintiff was originally represented by Coudert Brothers LLP; present counsel was substituted on November 4, 2005 after Coudert Brothers dissolved. Declaration of Robert E. Hanlon ('Hanlon Decl."), Docket Entry 12, ¶ 4. Plaintiff requests that it be awarded attorney's fees for Coudert's services in the amount of $10,250, comprised of $8,500, a flat rate for filing the complaint, and an estimated fee for additional work in the amount of $1,750. Pl. Mem. p. 21. Plaintiff asserts that it requested supporting documentation from its original attorneys, but to no avail. Chai Decl. ¶¶ 47-48. Although plaintiff may not be responsible for its predicament, the fact is that plaintiff has failed to submit time records, or any other documentation, to support Coudert's charges as *Carey* requires. Moreover, in his affidavit in support of plaintiff's request for attorney's fees, plaintiff's current counsel describes his law firm's work as including meeting with plaintiff "regarding the merits of its claims and the proceedings to date" and "[i]nvestigation of EGI's copyright interests and filings." Hanlon Decl. ¶ 9. This is work that Coudert presumably already performed, and for which it already billed. Accordingly, I recommend that plaintiff be denied an award of attorney's fees for Coudert's work.

Plaintiff has submitted an attorney declaration and supporting records for the fees associated with its current representation. *See* Hanlon Decl. In its application, plaintiff asserts it has incurred $18,077 in attorney's fees for one week of work, representing 48.3 hours billed by attorneys at rates ranging from $550 to $210 per hour. Hanlon Decl. ¶¶ 6, 11-13.

The Second Circuit recently clarified how to calculate a "presumptively reasonable fee" award, which is the product of the hours reasonably expended and a reasonable hourly rate.[7] *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 484 F.3d 162, No. 06 Civ. 86 (2d Cir. Apr. 24, 2007); *see also McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2d Cir. 1989). Focusing on how to determine a reasonable hourly rate, the Second Circuit concluded in *Arbor Hill* that "[w]hile the district court should generally use the prevailing hourly rate in the district where it sits . . .[,] the court may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel. . . ." *Arbor Hill*, 484 F.3d at _, No. 06 Civ. 86, slip op. at 2-3. Prior to the Second Circuit's decision in *Arbor Hill*, courts in the Eastern District of New York had recognized the "unique circumstances of attorneys in New York City who practice in two federal jurisdictions [the Eastern and Southern Districts of New York] within the same city." *New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998). *See also A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 80-81 (2d Cir. 2005); *Nicholson v. Williams*, 2004 WL 4780498, at *10-12 (E.D.N.Y. Apr. 5, 2004); *Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64 (E.D.N.Y.

---

[7] The Court abandoned the term "lodestar" in determining a reasonable attorney's fee award. *Arbor Hill*, 484 F.3d at _, No. 06 Civ. 86, slip op. at 16-17.

2003).

The rates sought by counsel are at the high end of the spectrum even for intellectual property cases litigated in the Southern District of New York, where plaintiff's counsel's office is located.  *See*, *e.g.*, *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (awarding $520 an hour for a partner and over $275 an hour for associates in copyright case); *see also Pannonia Farms, Inc. v. USA Cable*, 2006 WL 2872566, at *3 (S.D.N.Y. Oct. 5, 2006) (awarding $400 an hour to senior attorney with extensive intellectual property background, $225 an hour for associates, and $100 for paralegals); *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003) (awarding $350-375 per hour for partners, noting that plaintiffs' counsel specialized in copyright, trademark and entertainment law).  Cases awarding fees in the Eastern District of New York, albeit prior to the Second Circuit's decision in *Arbor Hill*, indicate that plaintiff's rates are unreasonably high for this district.  *See*, *e.g.*, *Atlantic Recording Co. v. Elizabeth Records, Inc.*, 2006 WL 1027151, at *1-2 (E.D.N.Y. Apr. 14, 2006); *Comm'n Express Nat'l, Inc. v. Rikhy*, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006); *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *5-7 (E.D.N.Y. June 13, 2005); *Tokyo Electron*, 215 F.R.D. at 64.

In determining a reasonable hourly rate, the Second Circuit emphasized in *Arbor Hill* that a court should consider

> what a reasonable, paying client would be willing to pay consider[ing] . . . the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that

12

> of his client) in achieving the ends of the litigation or initiated the
> representation himself, whether the attorney was initially acting
> *pro bono* (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns
> (such as reputation, etc.) the attorney expected from the
> representation.

*Arbor Hill*, 484 F.3d at _, No. 06 Civ. 86, slip op. at 4.  Taking all of these factors into account, and recognizing in particular that copyright is a specialized area of law, I recommend that the hourly rates charged by counsel be reduced to $400 for Hanlon, $300 for Clark, an associate attorney, and $200 for Moore, a junior associate attorney.  *But see Yurman Designs*, 125 F. Supp. 2d at 58 ("[T]he rates sought by this application are the rates charged the client.  [Plaintiff] is a sophisticated and significant participant in the jewelry business.  Its acceptance of the rates charged is in itself substantial evidence of their reasonableness.").

The number of hours also seems excessive, at least at first blush.  Hanlon Decl. Ex A. Plaintiff has failed to explain why an uncomplicated motion for default judgment resulted in almost fifty hours of work in one week.  *Id*.  The court would expect a typical motion of this type to require ten to twenty hours.  I also recognize, however, that plaintiff is not recouping any of the fees it incurred while represented by Coudert, and that current counsel was required to spend time learning the case from scratch.  Accordingly, while I might recommend a reduction in hours in other circumstances, I decline to do so here, and instead recommend that plaintiff be awarded $15,440 in attorney's fees.[8]

On February 22, 2006, plaintiff filed a supplemental submission in support of damages, indicating that it had incurred an additional $13,751.30 in attorney's fees since November 7,

---

[8] Hanlon billed 11.70 hours; Clark billed 34.40 hours; Moore billed 2.20 hours.  Hanlon Decl. Ex. A.  These hours were multiplied by the adjusted rates for a total of $15,440.

13

2005.  Declaration of Robert E. Hanlon, Docket Entry 21, ¶ 5.  From a review of the docket sheet, these fees appear to be related to defendants' withdrawn motion to set aside the default. With its supplemental submission, however, plaintiff failed to submit contemporaneous time records detailing the additional work, as required by *Carey*.  Therefore, I respectfully recommend that plaintiff's application for these fees be denied.  Additionally, plaintiff's supplemental submission requests $1,490.94 in costs incurred since November 7, 2005, without any explanation or supporting documentation for these costs.  I recommend that plaintiff's application for an award of these costs be denied as well.

Plaintiff also seeks to recover prospective fees estimated as "likely to be incurred through implementation of the Proposed Default Judgement and Permanent Injunction."  Hanlon Decl. ¶ 13.  I recommend that an award of estimated future attorney's fees be denied without prejudice to plaintiff's right to seek fees for enforcing the judgment if and when they are incurred.

Finally, plaintiff seeks to recover $595 in costs associated with this action.  Hanlon Decl. ¶ 14.  This amount is reasonable, compensable, and is substantiated by documentary evidence. *Id*. Ex. C.  Therefore, I respectfully recommend that plaintiff be awarded $15,440 in attorney's fees and $595 in costs for a total of $16,035 in connection with this litigation.

D.    Other Relief

Pursuant to the Copyright Act, plaintiff also seeks a permanent injunction against defendants and impoundment and forfeiture of all of defendants' copies of EGI's Works and equipment used in illegally copying, storing, and distributing the Works.

Plaintiff requests a permanent injunction prohibiting defendants from further copying, distributing, or playing plaintiff's Works and contends that defendants will continue to infringe

14

EGI's copyright interests unless the court grants an injunction. Pl. Mem. pp. 10-11. A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Main Events/Monitor Productions v. Batista*, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because an injunction is an available remedy under 17 U.S.C. § 502(a). As to the second factor, a party seeking an injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. *See Rondeau v. Monsinee Paper Corp.*, 422 U.S. 49, 57, 95 S. Ct. 2069, 2075 (1975). Where, as here, a plaintiff establishes a prima facie case of copyright infringement, there is a presumption of irreparable injury. *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002); *Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 51-52 (2d Cir. 1989). In addition, plaintiff alleges that defendants' copies of the Works are "of poor and sub-standard quality . . . and the use of such copies tarnishes the reputation of EGI." Chai Decl. ¶ 31.

Moreover, plaintiff has demonstrated that defendants are likely to continue the infringing conduct absent injunctive relief. Plaintiff sent defendants a letter in December of 2004, notifying them of plaintiff's copyright interests. Chai Decl. ¶ 13. In April of 2005, EGI's president visited Legend and observed that defendants were infringing plaintiff's copyrights. *Id.* ¶¶ 14, 19-20. Defendants were then served with the complaint on June 4, 2005. Docket Entry 5. And in October of 2005, Chai returned to Legend and noted that defendants' infringing activities were ongoing. *Id.* ¶¶ 21-25. Therefore, I conclude that plaintiff has demonstrated irreparable harm, and respectfully recommend that plaintiff's application for a permanent injunction prohibiting defendants from copying, distributing, performing, or otherwise infringing plaintiff's Works be

granted.

Additionally, plaintiff seeks an order authorizing the seizure and forfeiture of all of defendants' copies of the Works and of defendants' equipment used in making defendants' illegal copies. Pl. Mem. pp. 11-13; Proposed Default Judgment and Permanent Injunction, Docket Entry 13. Pursuant to the Copyright Act, a "court may order the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights, and of all . . . other articles by means of which such copies . . . may be reproduced." 17. U.S.C. § 503(b). Similar to the standard applicable for injunctive relief, impoundment and forfeiture are appropriate where a plaintiff establishes a prima facie case of infringement. *Antenna Television v. Aegean Video, Inc.*, 1996 WL 298252, at *13 (E.D.N.Y. Apr. 23, 1996). Impoundment and forfeiture are appropriate here, especially in light of defendants' sweeping infringement of plaintiff's Works. Chai Decl. ¶¶ 21, 25. Therefore, I respectfully recommend that plaintiff's application for an order of impoundment and forfeiture be granted.

I further recommend, however, that the scope of the order sought by plaintiff be modified not to include the seizure of any of defendants' business records, other documents, or equipment that does not contain copies of EGI's Works. The Copyright Act authorizes seizure and destruction only of infringing materials and equipment used to make illegal copies, not documents. 17 U.S.C. §§ 503(a), 503(b); *Warner Bros. Inc. v. Dae Rim Trading Inc.*, 677 F. Supp. 740, 766 (S.D.N.Y. 1988). Moreover, plaintiff requests the seizure and destruction of *all* of defendants' equipment that may have been used in the illegal copying and distributing of plaintiff's Works. Seizure and destruction of equipment is appropriate only where the equipment

16

was *primarily* used in the infringing activity. *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 863-64 (S.D.N.Y. 1984). Plaintiff here has failed to establish that defendants' machines, devices, or equipment capable of copying, storing, distributing, or playing EGI's Works are primarily used in the illegal infringement. It is easy to imagine that some of the machines and equipment may have significant legitimate uses. Accordingly, I respectfully recommend that plaintiff's seizure order be restricted to physical copies of the Works and machines, devices, or equipment that store copies of EGI's Works. *See* Proposed Default Judgment and Permanent Injunction, Docket Entry 13, paragraphs (g), (h), and (m).

## Conclusion

For the reasons stated above, I respectfully recommend that plaintiff be awarded $120,000 in statutory damages together with attorney's fees and costs in the amount of $16,035, for a total judgment of $136,035 against Legend, Wa Men Zhang, and Wei Hao Li, jointly and severally. In addition, I respectfully recommend that plaintiff's application for a permanent injunction prohibiting defendants from copying, distributing, performing, or otherwise infringing plaintiff's Works be granted. Lastly, I respectfully recommend that plaintiff's application for an order of impoundment and forfeiture be granted, but only with respect to defendants' copies of the Works.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and with the Honorable Carol Bagley Amon, United States District Judge, within ten days of the receipt of this Report and in any event no later than June 15, 2007. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*,

892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon

defendants at their last known addresses, and to file proof of service with the Court.

**Dated:**        **Brooklyn, New York**
                  **June 1, 2007**

                                                    _____/s/_____
                                                    **STEVEN M. GOLD**
                                                    **United States Magistrate Judge**

U:\eoc 2007\Damages Inquests\entral v legend - final.wpd